UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WILLIAM GOBLE,<br><br>      *Plaintiff*,<br><br>v.<br><br>LIBERTY LIFE ASSURANCE COMPANY OF BOSTON, d/b/a LIBERTY MUTUAL, and BNP PARIBAS COMPREHENSIVE WELFARE BENEFITS PLAN,<br><br>      *Defendants*. | Civil Action No. 12-6030 (PGS) (TJB)<br><br><u>MEMORANDUM</u> |

<u>SHERIDAN, U.S.D.J.</u>

      This matter comes before the Court on Plaintiff William Goble's ("Goble" or "Plaintiff") appeal, pursuant to FED. R. CIV. P. 72(a) and L. CIV. R. 72.1(c), of the October 11, 2013 Order entered by the Hon. Tonianne Bongiovanni, U.S.M.J. denying Plaintiff's Motion to Compel Discovery from Defendants Liberty Life Assurance Company of Boston and BNP Paribas Comprehensive Welfare Benefits Plan (collectively, "Defendants") (ECF No. 21). The Court decides this matter without oral argument pursuant to FED. R. CIV. P. 78(b). For the reasons set forth herein, Magistrate Judge Bongiovanni's Order of October 11, 2013 is affirmed.

**I.    BACKGROUND**

    **A.  Factual Background**

      Plaintiff William Goble was employed by BNP Paribas as a Senior Information Technology Auditor from April 2005 until January 14, 2010 when symptoms from peripheral neuropathy "forced [him] to cease working[.]" (Compl. at ¶ 35). On February 1, 2010, after

subjecting himself to clinical examination and testing by podiatrist Matthew Regulski D.P.M., Plaintiff filed a claim for short-term disability benefits. (*Id*. at ¶¶ 36-37). According to Plaintiff, "[h]is claim was approved on or about February 4, 2010 based on his symptoms of peripheral neuropathy and the certification of Dr. Regulski supporting his functional inability to work due to his medical condition." (*Id*. at ¶ 37).

On March 10, 2010, after Plaintiff's symptoms persisted, he sought a second opinion from Board-Certified neurologist Edward Spellman, M.D. who confirmed the diagnosis of Dr. Regulski and "diagnosed [Plaintiff] with chronic painful sensory peripheral neuropathy[.]" (*Id*. at ¶ 39). In addition, Plaintiff filed an application for Social Security disability benefits which was approved as of July 1, 2010. (*Id*. at ¶ 45). Liberty Life Assurance Company of Boston ("Liberty"), the claims administrator of the BNP Paribas Comprehensive Welfare Benefits Plan (the "Plan"), paid Plaintiff's short-term disability benefits for the maximum six-month benefit period allowed under the Plan through July 15, 2010. (*Id*. at ¶ 48). Liberty subsequently approved long-term disability ("LTD") benefits via letter dated July 29, 2010 and began paying Plaintiff's LTD benefits as of July 16, 2010. (*Id*. at ¶ 49). Liberty continued to pay Plaintiff LTD benefits "through the end of 2010[]" while Plaintiff continued to seek medical assistance. (*Id.* at ¶ 58). According to Plaintiff, Liberty also "arranged for [Plaintiff] to be secretly observed and followed on November 8, 10, and 12, 2010[]" by surveillance vendor HUB Enterprises, Inc. (*Id.* at ¶¶ 56-57).

In late 2010, Liberty referred Plaintiff's file to physician Gale Brown, M.D. who issued a report on January 5, 2011 concluding that Plaintiff could work in a sedentary occupation. (*Id*. at ¶ 59). Plaintiff contends that Liberty "disagreed with Dr. Brown's suggestion that [Plaintiff] was capable of working and continued to pay [him] disability benefits from January 2011 through

2

November 21, 2011." (*Id*. at ¶ 61). According to Plaintiff, Liberty arranged for Plaintiff to be further surveilled by HUB Enterprises, Inc. on April 18, 20 and 22, 2011. (*Id*. at ¶ 62).

In May 2011, Liberty referred Plaintiff's file for a second peer review by Dr. Brown who reiterated her position that Plaintiff was not disabled. (*Id.* at ¶ 65). On or about May 25, 2011, Liberty referred Plaintiff's file to the MLS Group of Companies ("MLS") to schedule Plaintiff for an Independent Medical Evaluation ("IME"). (*Id*. at ¶ 67). On June 27, 2011, Plaintiff underwent an IME with Gary Yen, M.D., who determined that Plaintiff could perform full-time sedentary work. (*Id*. at ¶ 68). In addition, on or about August 1, 2011, Liberty referred Plaintiff's file for an occupational analysis by Cascade Disability Management ("Cascade"). (*Id*. at ¶ 70). In a report dated August 22, 2011, Cascade set forth its conclusion that Plaintiff's occupation could be performed "at the sedentary level with certain accommodations." (*Id*. at ¶ 71). Based on these reports, Liberty subsequently terminated Plaintiff's LTD benefits via letter dated November 23, 2011. (*Id*. at ¶ 73).

On March 28, 2012, Plaintiff underwent a Functional Capacity Evaluation ("FCE") by Ellen Rader Smith, MA, OTR, CPE, CVE, who concluded that Plaintiff "is unable to work even in a sedentary occupation due to symptoms of peripheral neuropathy in his extremities and the effects of his neuropathic pain." (*Id*. at ¶ 74). On May 4, 2012, John Sargent, MS, CRC, LCMHC, analyzed Plaintiff's medical conditions and concluded that "he would be unable to work in his own or any occupation." (*Id*. at ¶ 75).

On May 18, 2012, Plaintiff submitted an administrative appeal of Liberty's determination in accordance with 29 U.S.C. § 1133. In support of his appeal, Plaintiff submitted the medical records and reports of his treating neurologist, Dr. Spellman, and podiatrist, Dr. Regulski, as well as the vocational analysis by Mr. Sargent and the FCE by Ms. Smith. (*Id.* at ¶ 77). Liberty

subsequently referred Plaintiff's file for review on appeal to psychiatrist/neurologist Andrew Gordon, M.D. On July 12, 2012, Dr. Gordon issued a report concluding that Plaintiff was capable of performing full-time work provided certain accommodations were made. Despite the medical evidence submitted and the prior findings of the Social Security Administration, Liberty upheld its determination and denied Plaintiff's appeal via letter dated July 20, 2012. (*Id.* at ¶ 80).

On September 25, 2012, Plaintiff filed a one count Complaint in the United States District Court for the District of New Jersey alleging that Defendants failed to pay LTD benefits to which Plaintiff was entitled under the BNP Paribas Comprehensive Welfare Benefits Plan in violation of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1000 *et seq.* Defendants filed their Answer on November 16, 2012.

On January 10, 2013, an Initial Pretrial Conference was held before Magistrate Judge Bongiovanni. After the parties met and conferred and were unable to come to an agreement regarding certain discovery disputes, Plaintiff advised the Court on March 11, 2013 of his intention to file a Motion to Compel Discovery. On April 12, 2013, Plaintiff filed said motion seeking disclosure of: (1) "important relevant data known to Liberty which was [allegedly] withheld from the administrative record[]"; (2) "the specific written rules, guidelines, policies, procedures or like written materials pertaining to [Plaintiff's] LTD claim"; and (3) Liberty's internal "policies and procedures with regard to issues including surveillance, the provision of surveillance footage to IME examiners, and the consideration of a favorable Social Security determination in administering a beneficiary's LTD claim." (Pl.'s Br. in Supp. of Mot. to Compel Discovery ("Pl.'s Br.") at 7-10). Defendants filed their Opposition to Plaintiff's motion on May 6, 2013 arguing that they had satisfied their discovery obligations under ERISA by

4

producing the "complete and unadulterated administrative record[.]" (Defs.' Opp'n to Pl.'s Mot. to Compel Discovery ("Defs.' Opp'n Br.") at 2).

On October 11, 2013, Magistrate Judge Bongiovanni issued a Memorandum Opinion and Order denying Plaintiff's Motion to Compel. The Court first considered the standard of review to be applied to a plan administrator's denial of benefits and noted that "[t]ypically in ERISA cases in which the arbitrary and capricious standard of review is used, the Court limits its review of the plan administrator's denial of benefits to only that evidence that was before the administrator when he or she made the decision being reviewed." *Goble v. Liberty Life Assur. Co.*, 2013 U.S. Dist. LEXIS 147272, at *22 (D.N.J. Oct. 11, 2013) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997)). The Court further noted that "discovery will typically not be permitted beyond the administrative record in ERISA cases unless some extrinsic factor exists, such as structural conflict of interest or significant procedural anomalies." *Goble*, 2013 U.S. Dist. LEXIS 147272 at *24. After considering the facts of the case, and finding no extrinsic factors to be present, the Court determined that the arbitrary and capricious standard applies. *Id.* at *24.

After determining that the arbitrary and capricious standard applies to Defendants' denial of Plaintiff's LTD benefits, the Court cited to the Third Circuit case of *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) for the proposition that "claimants are limited only to the administrative record in ERISA cases reviewed under the arbitrary and capricious standard." *Goble*, 2013 U.S. Dist. LEXIS 147272 at *25. Accordingly, the Court determined that, because Plaintiff's discovery requests go beyond the information contained in the administrative record, Plaintiff is not entitled to production of the requested documents. Moreover, the Court found that because "Plaintiff cannot establish that any of the policies sought in his motion were specifically generated in connection with his particular adverse benefit

determination, as required by [29 C.F.R. § 2560.503-1(m)(8)(iii),] . . . discovery beyond the administrative record is not warranted." *Id*. at *26. In addition, the Court found Plaintiff's argument that "Defendants' policies and procedures relating to surveillance, the provision of surveillance footage to IME examiners, and the consideration of favorable Social Security determination in administering a beneficiary's LTD are relevant to Plaintiff's claim[]" to be unpersuasive. Because the Court found that Plaintiff's requests for information go beyond the information in the administrative record and are not subject to the exceptions found in 29 C.F.R. §§ 2560.503-1(m)(8)(iii)-(iv) or 29 C.F.R. §2560.503-1(g)(1)(v)(A), the Court determined that Plaintiff is not entitled to additional discovery. On October 25, 2013, Plaintiff filed the instant appeal.

## II. DISCUSSION

### A. Standard of Review

A magistrate judge may hear and determine any non-dispositive pretrial matter pending before the district court. *See* 28 U.S.C. § 636(b)(1)(A). The district court will only modify or set aside a magistrate judge's decision on these matters if it is "clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a); *see also* L. Civ. R. 72(c)(1)(A) (stating that a district court judge "shall consider the appeal and/or cross-appeal and set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law."). A district court will, therefore, "review a magistrate judge's findings of fact for clear error." *Jazz Pharms., Inc. v. Roxane Labs., Inc.*, 2013 U.S. Dist. LEXIS 28374, at *3 (D.N.J. Feb. 28, 2013) (citing *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (internal quotations omitted); *see also Janssen Prods., L.P. v. Lupin, Ltd.*, 2013 U.S. Dist. LEXIS 85192, at *5 (D.N.J. June 18, 2013).

A finding is considered "clearly erroneous" when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948). A decision is considered contrary to law if the magistrate judge has "misinterpreted or misapplied applicable law." *Doe v. Hartford Life Acc. Ins. Co.*, 237 F.R.D. 545, 548 (D.N.J. 2006). The district court "will not reverse the magistrate judge's determination, even in circumstances where the court might have decided the matter differently." *Janssen Prods.*, 2013 U.S. Dist. LEXIS 85192 at *6 (citing *Bowen v. Parking Auth. of City of Camden*, 2002 U.S. Dist. LEXIS 14582, at *3 (D.N.J. July 30, 2002)). Moreover, "[a] district judge's simple disagreement with the magistrate judge's findings is insufficient to meet the clearly erroneous standard of review." *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 69 (D.N.J. 2000).

**B.  Analysis**

The Third Circuit has made clear that "the record for arbitrary and capricious review of ERISA benefits denial is the record made before the plan administrator which cannot be supplemented during litigation." *Johnson v. UMWA Health & Retirement Funds*, 125 Fed. Appx. 400, 405 (3d Cir. 2005) (citing *Mitchell*, 113 F.3d at 440). The Court has clarified, however, "that when a reviewing court is deciding whether to employ the arbitrary and capricious standard or a more heightened standard of review, it may consider evidence of potential biases and conflicts of interest that are not found in the administrator's record." *Id*. at 405-06.

Plaintiff argues the Court should have considered his discovery requests under a de novo standard of review because a regulatory anomaly exists. According to Plaintiff, the discretionary clause in Plaintiff's policy which purports to give Liberty "the authority, in its sole discretion, to

7

construe the terms of this policy and to determine benefit eligibility[]" is "invalidated by [N.J.A.C. 11:4-58] which has the effect of reverting the judicial standard of adjudication to the . . . de novo standard[.]" (Pl.'s Mem. in Supp. of Appeal of Oct. 11, 2013 Order ("Pl.'s Appeal Br.") at 5). A close reading of the regulation, however, indicates that Plaintiff fails to consider that a carrier "may include a provision stating that the carrier has the discretion to make an initial interpretation as to the terms of the policy or contract" so long as it may "be reversed by an internal utilization review organization, a court of law, arbitrator or administrative agency having jurisdiction." N.J.A.C. § 11:4-58.3. This is the type of review being undertaken here and the Court does not see any significant procedural anomaly that would necessitate a heightened standard of review. Since there is no reason to apply a heightened standard of review, the usual scope of discovery is applicable. Magistrate Judge Bongiovanni determined that Plaintiff's discovery requests went beyond the administrative record and this Court finds that determination neither clearly erroneous nor contrary to law.

     Moreover, Plaintiff has failed to set forth any unusual circumstance that would require production of the additional discovery. For example, Plaintiff seeks production of Liberty's policies regarding surveillance and surveillance footage, however, he fails to assert that such materials were actually relied upon by the administrator. In addition, Plaintiff seeks information regarding the impact a favorable Social Security Administration determination has on Liberty's own claim administration policies even though Liberty is not bound by that determination. *See Hoch v. Hartford Life & Accident Ins. Co.*, 2009 U.S. Dist. LEXIS 37037, at *48-49 (E.D. Pa. Apr. 29, 2009).

### III.	CONCLUSION

For the reasons set forth above, the Court finds that the Magistrate Judge's Order of October 11, 2013 is not clearly erroneous, unsupported by any evidence or contrary to law. Accordingly, the October 11, 2013 Order is affirmed. An appropriate Order follows.

April 25, 2014                                                    *s/Peter G. Sheridan*
                                                                           PETER G. SHERIDAN, U.S.D.J.